**John J. SCHILLER, Appellant,**

v.

**Mary B. LEWIS, Appellee.**

**No. 15582.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 22, 1970.

Rehearing Denied Feb. 26, 1970.

Cauley & Kershner, Wm. J. Kershner, for appellant.

W. James Kronzer, Houston—amicus curiae on Motion for Rehearing.

Fulbright, Crooker, Freeman, Bates & Jaworski, Kelly D. Williams, Harry L. Tindall, Houston, for appellee.

PEDEN, Justice.

Personal injury suit arising from a rear-end collision. Plaintiff John J. Schiller has appealed from a take-nothing judgment, which was based on the jury's not having found any negligence on the part of the defendant, Mary B. Lewis or any damages to Schiller.

In response to special issues the jury did not find from a preponderance of the evidence that the defendant 1) failed to make proper application of her brakes, 3) was operating her vehicle at a negligent rate of speed, or 5) failed to keep a proper lookout. The jury found 7) that the occurrence in question was the result of an unavoidable accident and in response to issues 8, 9 and 10, found that the plaintiff had not been damaged.

■ Appellant's points of error are:

1. "The trial court entered a take nothing judgment for Defendant."

2. "The trial court overruled Plaintiff's Motion for New Trial."

These points are multifarious, too general and they do not direct our attention to any error relied on for reversal. Under Rules 418 and 422, Texas Rules of Civil Procedure, we are not required to consider them, but we will liberally construe those rules and will not require the appellant to rebrief the case so that we may dispose of it on its merits. We gather from the statement and argument under appellant's points of error that the only basis for his points is his contention that each of the jury's findings was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

■ Under this contention we weigh all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Mrs. Lewis testified that she was driving west at about 20 miles per hour on Westheimer, a street she had travelled many times. It had rained earlier and was drizzling. Cars were parked on both sides of the street, leaving room for only one lane of westbound traffic and one lane of eastbound traffic. When she was about a block from the place where the collision occurred, she noticed that a car ahead of her was stopped and that, to her surprise, neither that car nor the one ahead of it started up when the traffic light ahead of them turned green. She looked in her mirrors and saw that the way was clear behind her, so she started to pass on the left side of the car ahead of her, but a car behind her, travelling "very fast," around 30 miles per hour, suddenly appeared and started to pass her, so she had to quickly cut back into her own (westbound) lane. She didn't get as far to her left as the center stripe, if there was one, before the other car almost hit her and she cut back. She applied her brakes, but her tires skidded on the wet pavement and she struck the car ahead of her, knocking it into the plaintiff's car. A Mr. McDonald was the driver of the car she hit.

She testified further that her brakes were working well and that she could have stopped without hitting anything if the street had been dry. That she was about twenty feet behind Mr. McDonald's car when she put her foot on the brake. She said she was not a good judge of distance. The speed of the car that passed her was so great that if she hadn't gotten out of his way he would have hit her so hard she probably would have killed Mr. McDonald or herself. The lane to her left was clear when she checked it, but she had to cut back when she saw that the car behind her had cut into it.

Officer Carleton, who investigated the accident, testified that the appellant's car was 127 feet east of the next intersection when McDonald's car struck it. Mrs. Lewis told him that she saw the cars ahead of her stopping and tried to cut out, but couldn't. She thought she hit McDonald's car after it had already hit Schiller's car, but Carleton explained how he could tell from his investigation that she was mistaken. He also testified that her car stopped at or near

the point of impact and that McDonald's car stopped seven feet ahead of hers after the collision. Carleton said the speed limit was 30 miles per hour, that he found no skid marks at the scene but that on wet streets no skid marks are left unless brakes are applied at full force.

Mr. McDonald's testimony was that Schiller's car came to a stop in front of him because the cars up ahead were "fishtailing" or sliding. He braced himself before Mrs. Lewis' car struck his because he looked in his rear-view mirror and saw her coming at a pretty good speed. Everything happened real quick. The impact knocked his wife against the dashboard and the windshield and knocked him into the steering wheel even though he was braced "real rigid." He would have gotten out of the way if he could have, but oncoming (eastbound) traffic prevented it. He didn't remember hearing any sound of brakes being applied before the impact. That Mrs. Lewis' car knocked his car into Schiller's.

Mr. Schiller's testimony was that he was stopped at the time of the collision because a car ahead of his started sliding around on the wet street, or "fishtailing", when it had to stop for a red traffic light. That there were three or four cars between his car and the traffic signal light. That he was going slowly, only about 20 miles per hour, when he noticed the car ahead of his sliding around, so he had no trouble stopping. That he had not been stopped long, only a few seconds, when his car was hit. Also, that there was no room in the eastbound lane of traffic for Mrs. Lewis to have used in passing him.

■ We overrule appellant's points. The jury's negative answers to the primary negligence issues mean that the plaintiff failed to sustain his burden of proving that the defendant was negligent. It is axiomatic that it is ordinarily within the province of the jury to determine whether one's conduct in driving an automobile was consistent with that of a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances. Also, that the jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.

Mrs. Lewis was 77 years old at the time of the trial. In testifying as to speeds and distances she was giving her estimations. Such testimony was not so clear, positive and unequivocal as to constitute judicial admissions.

■ Special Issue No. 1 asked whether "at the time of and on the occasion in question the defendant failed to make such application of her brakes as would have been made by a reasonably prudent person, * * *" etc. Considering Mrs. Lewis' testimony as to the sequence of events, it was difficult to submit the brake issue without making it either a global or a granulated one. The first issue seems to question her conduct as to 1) when she applied her brakes, 2) whether she applied them and 3) how hard she applied them.

As to whether her application of them was timely, a fact issue was raised by conflicting evidence as to whether the eastbound lane was clear for her when she first started into it. We cannot say that a preponderance of the evidence shows she was negligent in failing to apply her brakes at that time instead of trying to go around the stopped cars. Similarly, a fact issue was raised as to whether another car suddenly cut out of its traffic lane to pass her, requiring her to abruptly cut back into her lane. The jury was entitled to accept her testimony on this aspect of the accident and conclude that she was not negligent in then applying her brakes for the first time.

Mrs. Lewis did not testify as to how hard she applied her brakes. McDonald said he heard no braking or skidding sounds from her car. Schiller said other cars were skidding on the slippery street. The expert witness testified that he found no skid marks and it was his opinion that any skidding of her car would not have left

skid marks on the wet pavement unless she had made a "panic stop" or applied her brakes at full force. The defendant testified that she put on her brakes and her car skidded. We conclude that the plaintiff was unable to sustain his burden of proof if he was seeking to show that the defendant was negligent in failing to apply her brakes or in applying them with the wrong force. The jury's answer to the brake issue was not so contrary to the great weight of the evidence as to be clearly wrong and unjust.

As to speed, the jury was entitled to accept the defendant's testimony that she was going about twenty miles per hour as she was driving down Westheimer and when she started around the stopped cars. It is uncontroverted that the speed limit was thirty miles per hour. Mr. McDonald saw her in his mirror "coming at a pretty good speed." The testimony as to the force of the two impacts was available to the jury for its consideration in determining the defendant's speed.

Mrs. Lewis' testimony is sufficient to support a jury finding in her favor as to speed based on her testimony that the way was clear for her to go around the cars ahead of her when she first started to do so.

As to lookout, the jury was also entitled to accept the defendant's testimony that she saw McDonald's car at all material times. As to the car behind her, she said she looked in her mirror but didn't see it.

Her explanation was that it must not have been there but came up so rapidly that it overtook her. The jury may well have believed that it was somewhere behind her when she looked without seeing it, but that she was not negligent in the way she looked because that car was in a position not adequately covered by her mirror or mirrors.

■ The issue of unavoidable accident was raised by the testimony of all that the street was wet and slippery. Dallas Rail-

way and Terminal v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952).

The jury was entitled to remain unconvinced that a preponderance of the evidence showed that Mrs. Lewis was negligent as to her application of brakes, speed or lookout.

■ The jury's answers to the damage issues were contrary to the undisputed evidence as to damages and were so against the great weight of the evidence as to be clearly wrong, but the answers to those issues were immaterial in view of the absence of any finding that the defendant was negligent. Although the jury's having answered the damage issues contrary to undisputed evidence might cause suspicion that such answers were induced by prejudice or improper influence we cannot assume that its answers to the negligence issues were thus brought about when there is in the record substantial evidence to support those answers and no evidence that prejudice or improper influence entered into or caused them. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939).

■ The appellant's motion for a new trial was accompanied by the affidavit of a witness stating that while Mrs. Lewis was in the hallway near the courtroom on the last day of the trial, she put both hands to her face, started crying, and said "What will I do?" Further, that most of the jurors were standing in close proximity when she said this and the affiant heard it while standing about ten feet from her.

However, the appellant has not shown by a bill of exception or the statement of facts what, if any, proof was offered that there was any such communiction to the jury by a party or that injury to the appellant probably resulted.

Nor did the trial judge make findings of fact or conclusions of law as to any such proof, so the appellant has presented nothing for review with respect to the alleged

incident. We must presume that if any evidence was presented as to it, that evidence warranted the trial court's having overruled the motion for new trial. Phillips v. Fowler, 348 S.W.2d 224 (Tex.Civ.App. 1961, writ dism.). Rule 327, Texas Rules of Civil Procedure.

Affirmed.

## On Motion for Rehearing

We overrule the appellant's motion for rehearing. As to his contention that the finding of unavoidable accident was against the great weight of the evidence, we add these comments: The definition of unavoidable accident given in the court's charge was: "an event not proximately caused by the negligence of any party *to this suit.*" (emphasis added) The record does not show that any objection was made to this definition or to the submission of the issue. Unavoidable accident should be defined as an event not proximately caused by the negligence of any party to it. Dallas Railway & Terminal Co. v. Bailey, supra. Under the definition given in our case the jury was entitled to consider in connection with the unavoidable accident issue evidence that the collision was proximately caused by the negligence of the unnamed driver who, according to Mrs. Lewis, suddenly appeared and passed her, travelling very fast.

Since we cannot say she failed to keep a proper lookout, we conclude that she should not be required to have anticipated that a car would suddenly appear and begin to pass her, so close to her that she had to immediately cut back to her right and apply her brakes.

The defendant pleaded sudden emergency and sole proximate cause, and the evidence just noticed raises such issues, but under the definition given in our case it also raises the issue of unavoidable accident and is sufficient to support a finding that the accident was unavoidable.